## CARLETON v. HAYWOOD & a.

Where a married woman received money from the plaintiff under an agreement that she would keep it for him or loan it for him, according to her judgment, and subsequently she and her husband, jointly, wrongfully and fraudulently converted the money to their own use. *Held*, that assumpsit against the husband and wife, jointly, for money had and received, would not lie.

*Semble* : That in such a case, trover might be maintained, after demand.

At common law the husband is liable for the torts of his wife, where the wrongful act is done by her alone; and whenever in such a case, she is sued for a tort, the husband must be joined in the suit.

If in such a case the tort be committed in the presence and by direction of the husband, he alone is liable.

For the joint fraud, tort or criminal act of husband and wife, where the circumstances are such as to rebut the presumption of the husband's coercion, both may be held jointly liable, civilly and criminally.

Assumpsit upon a mere personal contract made during coverture will not lie against a married woman, whether her husband be joined in the suit or not, unless such contract was made. in respect to property held by the wife to her sole and separate use.

Misjoinder, in an action against husband and wife may be taken advantage of by general demurrer.

ASSUMPSIT, by James C. Carleton against Joel M. Haywood and wife, for money had and received.

The defendants filed a general demurrer, claiming that this action in common form, does not lie against husband and wife. The court overruled the demurrer, and the defendants excepted. The case was tried upon the general issue, saving to the defendants the benefit of the exception. The plaintiff had sent $500, to Mrs. Haywood, his sister, and all the money, had not been returned to him, although he had demanded it. The court instructed the jury, that if Mrs. Haywood received the $500 under an agreement expressed or implied, that she should keep it for him, or loan it for him according to her judgment, and if, in known and intended violation of that agreement, she and her husband jointly, wrongfully and fraudulently converted any part of it to their own joint use, and wrongfully refused to pay such part to the plaintiff on reasonable demand before suit, the defendants were jointly liable for the amount thus fraudulently converted.

To these instructions the defendants excepted. The defendants objected that there was no evidence of a joint conversion by them. The court overruled the objections and the defendants excepted.

The plaintiff enlisted in the army, obtained the $500 as a bounty, sent it to his sister in June, 1864, by express to Claremont, where defendants lived; went to Washington with his regiment; was in

hospital; came on furlough in November, 1864, to Colebrook, where his father lived; went to Canada, and remained there most of the time, till the close of the war.

The plaintiff testified, that with the money he sent a line to his sister, telling her to keep the money till he called for it; that on his way to Colebrook in November, 1864, he called at defendants' house in Claremont, and wanted the money, and they said they had let the town have it for three years. Mr. Haywood said so; said he couldn't pay it till the town note was out; said he put $500 with it, and loaned it to the town in August, 1864. "I think I told him I didn't give him any such instructions. He let me have $100 on condition that I would give his wife $10 of it, which I did, and gave him a receipt for $100. The next spring I was in Canada, and wrote to him for money, and he sent me a watch, which he called $75. I didn't write for the watch and didn't want it. This is it, and I now offer to return it. I was at Claremont again in 1865, for money. Mrs. Haywood said her husband was not at home, and she couldn't pay me. I was there again in about a year, and asked him about the money. He told me he had paid my father the amount of the note, and given him the balance of the money, and didn't owe me anything."

Mrs. Mary Carleton testified: "I married the plaintiff's father six years ago last or next April or May. I was at defendants' house. The plaintiff had wanted to get money of my husband, and in consequence of what he said I went to Clarement, and the defendants said if we thought it best, we could let the plaintiff have the money; that we should be safe. Mr. Haywood thought $50 would be better for him than more. They said the town of Clarement had it; Mr. H. said it wouldn't be due till three years from the time when it was let, and told me if we let him have the money, to take his note, and it would be all right. Mrs. H. said she couldn't pay it till the town note was due; I think both of them were present. Upon that, my husband let the plaintiff have $175, and it has not been paid back to us. The plaintiff came from Canada, to our house in Colebrook, when I went to Claremont."

The plaintiff introduced three letters, with evidence tending to show that they were written by Mrs. H. to her father. One of them, dated April 2, states: "My husband is away; I think, by what I heard him say, he expects you to let him have the money, the amount you wrote. As I wrote you before, I think it will be all right, you can do as you please about letting him have any; I don't think there will be any trouble." The letter dated April 11, states: "You say that James says my husband has got a thousand dollars of money that belongs to him. It is not so, nor never was, but if you want to let him have $250, I presume it will be safe enough, but should you let him have it, I would take his note." The other letter, dated December 18, states: "James came here Sunday, and was tight; Mr. Haywood was gone, I ordered him away; he came in Monday and forbid me paying you money, I told

him he was too late, it was all fixed and paid to you; it was the only way I could get rid of him."

Mrs. Hannah Colburn, a sister of the plaintiff, testified: "At Claremont, Mrs. H. told me she received $500 from the plaintiff. It was the last of October or first of November, the plaintiff was there at the same time; Mr. H. said the plaintiff was better off without it than with it; that he had let the town have it and couldn't get it. Mrs. H. said I had better not say anything about it. She said a slip of paper came with the money, with nothing written on it but this: "Mary, keep this till I call for it, for God's sake." The plaintiff was there as this time after his money." Here the plaintiff rested.

Mrs. Haywood testified, among other things, as follows: "I have separate property of my own, and have lent money to my husband which he repaid; have always had money of my own by me; I let my husband have $200 of plaintiff's money. He wanted to make out $1000 for the town. In the fall, when brother went up to vote, he came to our house, and wanted money. I said I could not let him have any because I had disposed of it; would ask my husband if he would let me have some for him. The plaintiff wanted $150. Husband concluded to let me have $150 for the plaintiff, and when the town paid the money, my husband should have his pay; I suppose he paid the plaintiff $150; the plaintiff gave me $10. I next heard from the plaintiff in Canada by letter for money. I replied to that, that I couldn't send him any. He wrote again, I think, for money. Then he wrote for the watch and asked the price, and I wrote him the price, $75, and he wrote that I might send the watch, and I did. I was to make it all right with my husband. I paid husband $25, and that made $225 that I paid him; and the $150 and the watch made $225 that he let the plaintiff have. The rest I loaned to Cogswell & Haywood, who were doing business in Boston, (Haywood being a son of my husband,) soon after I let my husband have the $200 for the town. Cogswell & Haywood failed I think September or October, 1865, and I lost what I loaned them. This is the note I took of them for $350 on demand dated April 5, 1865. $50 of that was my own money."

The plaintiff's counsel claimed that Mrs. Haywood's manner of testifying, particularly on cross-examination, was such, that the jury must draw inferences unfavorable to her veracity, and her participation in the transaction in relation to the $500.

Mr. Haywood testified, among other things, as follows: "When the plaintiff was at our house, my wife came to me and said James wanted $150, and that she hadn't the money she wanted to let him have, and I gave it to him at her request; and he had a watch for $75. I loaned some of my own money to Cogswell & Haywood. My son was a minor. I happened to be in their store in Boston, at the time of their failure, and they turned out to me, and I carried home several hundred dollars' worth of their goods in part payment of my debt. Since that time my son has been in business with me. At that time I forgot the note which my wife held against them."

The town note was not given on any specified time, but the understanding was that it should be three years.

Ella McAllister, a witness called by the plaintiff, testified : " Mrs. Mary Carlton, wife of the plaintiff's father, is my aunt.   Two years ago last fall, last of September or first of October, I was at the defendant's house with the plaintiff's father, and he spoke of James' money.   Mrs. H. denied that she ever had any of James' money. The old gentleman turned to me and said : ' There ! there ! there !' "

In many particulars, the evidence was conflicting.   The plaintiff produced a watch at the trial, and introduced evidence tending to show that it was the watch sent to him in Canada, and that at the time it was sent, it was not worth more than $30, and that Mr. H. had been a dealer in watches and jewelry.

Verdict for the plaintiff, which the defendant moved to set aside.

*Geo. Y. Sawyer & Sawyer, Jr.*, for the defendants.

I.   The demurrer should have been allowed.   No action of assumpsit lies against husband and wife on account of a contract made during coverture.   " An action upon an assumpsit by husband and wife, against both, is bad; for *quoad* the wife, the promise is void ; though it be for vestments bought by the wife."   Comyns' Digest, Baron & Feme, Y. vol. 2, p. 111, and cases there referred to.   *Grasser et ux* v. *Eckart et ux*, 1. Binney 575, is directly in point.   It was there held that a count charging man and wife upon a joint assumpsit in consideration of money had and received, is bad, and cannot be amended.   In that case, the court held that it could not be presumed that the assumpsit was on account of the private property of the wife.   In 1 Chitty's Pleadings 43, it is laid down that the wife can *in no case* be sued upon mere personal contract made during coverture.

II.   " Actions for torts, by husband and wife jointly, must be against the husband alone, for " the whole shall be intended to be the act of the husband, as trover of goods and conversion to their use."   Comyns' Digest, *ante*.   If *a joint wrongful and fraudulent conversion* by husband and wife, furnishes no cause of action against them *jointly*, by what process that *wrongful and fraudulent conversion* is transmuted into a *joint* assumpsit upon which both may be sued, it is impossible to conceive.   Even the joint crimes of the husband and wife, with certain exceptions, are in contemplation of law, the crimes of the husband alone.   Russell on Crimes, vol. 1, p. 18.

III.   There is no evidence whatever of a *joint* conversion by the husband and wife in this case.   The facts and circumstances detailed in the evidence are merely their separate and independent acts, and show no *joint* conversion from which the jury would be warranted in finding for the plaintiff, even were the instructions of the court correct.

*Morrison & Stanley*, for the plaintiff.

This action was properly brought against the husband and wife, and the instructions of the court were sufficiently favorable to the defendants. *Whittemore* v. *Delano*, 6 N. H. 543; *Jillson* v. *Wilbur*, 41 N. H. 106. There was evidence competent to be submitted to the jury under which they might find a joint liability on the part of the defendants.

The loaning of the money to the town and the evidence contained in letters of the wife are facts which are entitled to be considered by the jury, and if competent to be submitted to them, their weight is wholly matter for them, and the verdict will not be disturbed. *Wendell* v. *Moulton*, 26 N. H. 41.

FOSTER, J. By the theory of the common law, the wife's legal existence is suspended during the continuance of the marriage state. Her property and her civil rights are subjected to her husband's control. Her fortunes pass by marriage into her husband's hands. She cannot earn for herself, nor, in general, contract, sue or be sued in her own right. But, on the other hand, and in order to approximate equality in the system of matrimonial merger and unity, the same common law imposes upon the husband the obligation to pay debts of his wife which he, in fact, never contracted, and makes him answerable to a very great extent, for her wrong doings, by force of a presumption, resting too often in pure fiction, that the wife, in her misdemeanors, acts, not from the promptings of her own mind, but by force of the commands and coercion of him whom she had promised to obey. Concerning which, says Mr. Justice Kent, in *Marshall* v. *Oakes*, 51 Maine 310, " how carefully the fathers studied the first case in point, as recorded in Genesis chap. iii, or some of the subsequently reported cases, where, to common observation, the woman and wife appears as the prime mover in wrong and mischief, we cannot know, and need not discuss."

The general rule of the common law, then, is, that the husband is liable for the torts of his wife, where the act is done by her alone; and whenever, in such a case, she is sued for a tort, the husband must be joined in the suit. Bac. Ab. Bar. & Feme L.; Com. Dig. Bar. & Feme Y.; 1 Chitty's Pl. 81; Schouler's Dom. Rel. 103; *Whitmore* v. *Delano*, 6 N. H. 545; 2 Kent's Com. 149; *Jillson* v. *Wilbur*, 41 N. H. 106; *Head* v. *Briscoe*, 5 Car. & P. 484; *Keyworth* v. *Hill et ux*, 3 B. & Ald. 685.

If the wrongful act of the wife be committed in the presence and by the direction of the husband, he *alone* is liable. 2 Kent's Com. 149, Schouler's Dom. Rel. 103.

The presumption, *prima facie*, is, that the wife acted under coercion, if the husband was actually present. This presumption arises as well in civil suits for torts, as in criminal cases. But it may be rebutted by facts, showing that the wife was the instigator or more active party; or that the husband, though present, was incapable of coercion; or, in cases relating to acts of violence, that the wife was the stronger of the two. 2 Hill. Torts 590; Sch. Dom. Rel. 102;

1 Wheaton's Crim. Law 102–3 ; 2 Kent's Com. 150 ; *Com.* v. *Lewis*, 1 Met. 153. In such cases, the responsibility for the wife's misdoings is not cast upon the husband alone, but they are either liable jointly, or, in certain cases, she alone is made responsible.

And where there are other facts established, besides the presence of the husband, as to the participation of the wife in originating and carrying on the common purpose, which tend to rebut the presumption, it is a question for the jury to determine, whether or not the presumption is overcome. 2 Hill. Torts 590 ; *Marshall* v. *Oakes*, 51 Me. 311.

" This presumption," it is said, " is one of the compensations, or offsets, which the old common law gave, for the benefit and protection of the wife, for its stern and unyielding doctrines in relation to the superior marital rights of the husband, by which the personal property and legal existence of the wife are nearly all lost or merged in her baron or lord." *Marshall* v. *Oakes*, before cited.

And, in any event, so far as the fraud or injury complained of is made the subject of a civil suit, the general principle of the wife's disability remains the same ; namely, that the husband compensates or receives the compensation. Sch. Dom. Rel. 101.

Mr. Justice Parker, in *Whitmore* v. *Delano*, says : " There seems to have been some diversity of opinion whether the wife is liable to be sued where the tort is the joint act of the husband and wife." And the learned judge does not give us the benefit of his own views upon the subject ; but we think it may be regarded as settled now, whatever diversity of opinion may have prevailed, that for the joint fraud, tort or criminal act of husband and wife, where the circumstances are such as to rebut the presumption of the husband's coercion, both may be held jointly liable, civilly or criminally. Thus in Bac. Ab. Bar. & Feme L., it is said : " If goods come to a feme-covert by trover, the action may be brought against the husband and wife ;" but, it is added : " The conversion must be laid only in the husband, because the wife cannot convert goods to her own use, but the action is brought against both, because both were concerned in the trespass of taking them."

Again, it is said : " If a trover or conversion of goods be brought against baron and feme, in which it is supposed that they found the goods and converted them to their own use, this is not good ; for, presently by the conversion of the feme, it is to the use of the baron, and not to the use of the feme." Viner Ab. Bar. & Feme U. But in a note to the text, it is said : " If feme-covert takes my sheep and eats them, trover lies against the baron and feme ; and that there may be a conversion by the wife to her own use, as where the trover was of barley, if she bakes it into bread and eats it herself ; and Brampton, Ch. J. (Mich. 15 Car. 1), said that a wife has capacity to take to her own use. The laying of the conversion *ad usum ipsorum*, though naughty, is made good by the verdict.

In *Keyworth* v. *Hill et ux*, 3 B. & Ald. 685 : Abbott, C. J., in reference to the exception on account of misjoinder, said : " The

ground of the objection is, that inasmuch as a married woman cannot acquire property, the conversion can be only the act of the husband, and must be so charged. But the allegation does not necessarily imply acquisition of property, for a conversion may be by actual destruction of the property.

And again: it was said by the court (Noy, 79), in an action of trover against baron and feme for a conversion by the wife during coverture, that the action was good, "for although a feme-covert cannot make a contract for goods nor be charged for them, yet she may covert them."

*Fawcett* v. *Beavres and wife*, 1 Levinz Pt. 2 p. 63, was case for retaining the plaintiff's servant, alleging that the defendants' jointly, "*machanantes* to deprive the plaintiff of the services of said A., *retinuerunt*," &c.

The suit was not maintained, because it appeared that the servant having voluntarily left the plaintiff, remained with the defendants without their entertainment. In a note, the reporter says: "No notice was taken of the action being brought against the husband and wife; and a feme-covert cannot retain or contract. But, perhaps, the receiving and keeping of him, without contract, are a trespass, of which a feme-covert may be guilty, sufficient to maintain this action against her." And see *Lady Chaworth's Case*, 1 Lev. Pt. 1, p. 51.

A joint action of trespass will lie against husband and wife for an assault committed by both. *Roadcap* v. *Sipe*, 6 Gratt. 213.

And on indictment, husband and wife are jointly liable for keeping liquor for sale contrary to law, where there is evidence against him, and also evidence of her participation in the offence by acts done in the absence of the husband, and not appearing to have been done by his coercion. *Com.* v. *Tyron*, 99 Mass. 442. See also, Roscoe's Crim. Ev. (2d Ed.) 879; 1 Russ. Crimes (7th Am. 2d) 20, 21; 2 Hill. Torts 590; 2 Kent's Com. 149; *Keyworth* v. *Hill*, 3 B. & Ald. 688; *Vine* v. *Saunders*, 4 Bing. N. C. 96; 2 Saund. Pl. & Ev. 194.

And it is clearly established that the general principle that for the fraud or other tort of a married woman an action may be maintained against her and her husband, applies only to torts *simpliciter*, or cases of pure and simple tort, and not where the substantive basis of the fraud is the contract of the wife. *Keene* v. *Hartman*, 28 Pa. St. 497.

In the present case there was abundant evidence from which the jury might have found the active participation of the wife in the wrongful and fraudulent converson to their own joint use of the money received by her from the plaintiff, in known and intended violation of her agreement to keep or to loan it for him.

But the question before us relates to the joint liability of the defendants, in assumpsit.

Whether the plaintiff might have maintained trover in the present case, it is immaterial to inquire. He has seen fit to waive the tort, if any has been committed, and to bring his action in assumpsit for money had and received.

In some instances a party defrauded and in whose favor an action of trespass or trover is an appropriate remedy may waive the tort and proceed in assumpsit.　The doctrine, as recently declared in this state, is this : "that one whose goods have been taken from him or detained unlawfully, whereby he has a right to an action of trespass or trover, may, if the wrong doer sell the goods and receive the money, waive the tort, affirm the sale, and have an action of money had and received for the proceeds." *Smith* v. *Smith*, 43 N. H. 538 ; *Mann* v. *Locke*, 11 N. H. 246 ; *Jones* v. *Hoar*, 4 Pick. 285 ; *Glass Co.* v. *Walcott*, 2 Allen 227 ; *Woodbury* v. *Woodbury*, 47 N. H. 22.

And, in this case, the disposition of the plaintiff's money by the defendants to their own uses, by loans taken in their own names, might perhaps be deemed sufficiently analagous to a sale for their own benefit of property converted, to bring the case within the principle permitting the election of remedies ; but the doctrine has no application to the case of husband and wife jointly liable in trover, and cannot be applied in subversion, as it manifestly would be, of the rule of the common law that "*an action upon an assumpsit by husband and wife, against both is bad*; for *quoad* the wife, the promise is void." Com. Dig. Bar. & Feme T.　This rule is as old as the feudal system upon which the common law regulating the condition of husband and wife is founded, and modern legislation has not yet assailed it :　See Kent's Com. 149 ; Sch. Dom. Rel. 74.

In accordance with this fundamental maxim, it is held that "a man shall not have an action of debt against baron and feme upon contract made by them."

"Writ of covenant does not lie against baron and feme, upon covenant made by them by deed indented."

"A man shall not have action upon obligation made by them two."

"Writ of detinue does not lie against baron and feme, upon goods coming to their possession by trover."　Vin. Ab. Baron & F., U. ; Lawes on Pl. in assumpsit, 461.

"In covenants and leases respecting repairs and rents that accrued after the marriage, the wife cannot be made liable ; for the obligation that arises under such a contract is transferred to the husband." Reeves Dom. Rel. 136.

Says Mr. Ch. J. Spencer : "No principle is better settled than that the wife can in no case be sued upon a mere personal contract made during coverture, whether joined with her husband or not, unless the husband be *civiliter mortuus*, or banished or transported." *Edwards* v. *Davis*, 16 Johns. 286.

A married woman is not bound by a covenant of warranty in a deed in which she has joined with her husband in the conveyance. *Wadteigh* v. *Glines*. 6 N. H. 17.

In *Priest* v. *Pinkham*, 18 N. H. 520, Mr. Ch. J. Parker quotes the language of Tilghman, C. J., in *Grosser* v. *Eckart*, 1 Binney 575, as follows : "The defendants, man and wife, are jointly charged upon an assumption made to them to the plaintiffs in consideration of

money had and received by them for the use of the plaintiff.     Here is an attempt to charge a married womam on a contract made by her jointly with her husband during the coverture.     This is not warranted by any precedent or principle that I have heard of.     A married woman can make no contract."

And Ch. J. Parker adds : ·"The authorities on this point are abundant and conclusive."     These views are recognized in the subsequent cases of *Bailey* v. *Pierson,* 29 N. H. 77 ; *Ames* v. *Foster,* 42 N. H. 381 and *Shannon* v. *Canney,* 44 N. H. 592 :     And see *Rawlings* v. *Bell,* 1 C. B. 268 ; *Edwards* v. *Davis,* 16 Johns. 281.

Misjoinder, in an action against husband and wife, may be taken advantage of by general demurrer.     *May* v. *House et ux,* 18 Eng. Com. Law 854 ; 1 Chitty Pl. 44, 92.

The verdict must, therefore, be set aside, and there must be

*Judgment on the demurrer for the defendants.*